# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT HUGHES,           )
                         )
        Petitioner,      )    C.A. No. 08-165 Erie
                         )
    v.                   )
                         )    Chief Magistrate Judge Baxter
RAYMOND J. SOBINA, et al., )
                         )
        Respondents.     )

## OPINION AND ORDER[1]

### I. Introduction

Petitioner, Robert Hughes, is a state prisoner currently incarcerated at the State Correctional Institution in Albion, Pennsylvania ("SCI-Albion"). He has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1], in which he claims that the Board of Probation and Parole (the "Board") and/or SCI-Albion's Parole Office have retaliated against him for filing civil rights lawsuits by continually postponing his parole-release date.[2] Petitioner currently is scheduled to be released to parole on June 30, 2009. He seeks an order from this Court directing that he be released immediately.

#### A. Relevant Background

On July 19, 1983, Petitioner was sentenced by the Court of Common Pleas of Philadelphia County to a term of imprisonment of 16 to 45 years on convictions of robbery and carrying a

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have an United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Petitioner has filed in this Court civil rights lawsuits against Department of Corrections ("DOC") employees and medical personnel in which he has asserted claims of deliberate indifference to a serious medical need, claims of excessive force, and related claims. See Hughes v. M. Eitner et al., Civil Action No. 2:05-463; Hughes v. P. Pillai, M.D., et al., Civil Action No. 1:07-55; Hughes v. P. Longstreet M.D., et al., Civil Action No. 1:08-73. None of these lawsuits involved the decision makers in this case, namely the Board and members of SCI-Albion's Parole Office. In December 2008, he filed a civil rights action in which he named as a defendant John Doe of the Board. Hughes v. P. Longstreet M.D., et al., Civil Action No.1:08-353. In that action, he appears to be claiming, *inter alia*, that he was not being released to parole for impermissible retaliatory reasons. That lawsuit was filed after the decisions at issue in this case were made.

1

firearm in public. His minimum sentence date expired on March 26, 1999, and his maximum sentence date originally was set to expire on March 26, 2028.

In January 2001, the Board granted Petitioner parole to a Community Corrections Center (a "CCC"). His parole commenced on or around April 2, 2001. (See Declaration of Michael S. Weber, Institutional Parole Agent at SCI-Albion (hereinafter "Weber Decl.") ¶ 7-10, Ex. A to *Response*, Docket No. 14). In September 2001, Petitioner absconded from parole when he left the CCC and failed to return. The Board recommitted him as a technical parole violator and it also recalculated his maximum sentence date from March 26, 2028, to April 20, 2028 to account for the time he was delinquent while on parole. (Id. ¶¶ 11-13).

Several years later, on December 10, 2007, the Board granted Petitioner reparole to a CCC with the special condition that he receive mental health treatment at the CCC. (See *12/10/2007 Notice of Board Decision*, Weber Decl., Ex. 6). In accordance with the Board's decision, on January 11, 2008, Weber submitted a request to the DOC to place Petitioner in a CCC with mental health treatment. (Weber Decl. ¶ 15). In response, on January 30, 2008, Leslie S. Hatcher, Regional Director of the CCCs in Region 1, sent a memorandum to the SCI-Albion Parole Office in which she advised that February 19, 2008, had been established as the parole-release date for Petitioner, and that he was to be released to DRC, Dual Diagnosis, a CCC in Philadelphia. (*1/30/08 Memorandum*, Weber Decl., Ex. 7).

On February 14, 2008, just days before Petitioner was to be paroled to the CCC, SCI-Albion's Parole Office postponed his release date because Weber had discovered an error in the paperwork (specifically, Petitioner's Sentence Status Summary Sheet) that had been submitted to the Board.[3] (Weber Decl. ¶¶ 24, 27). Weber sent a memorandum to the Board on March 11, 2008, explaining the error and requesting that the Board review the corrected paperwork so that SCI-Albion could release Petitioner to parole. He wrote:

> On 12/10/07 a Board Action was generated granting this inmate Re-Parole to a [CCC] with mental health treatment for a minimum of three months and subject to certain special conditions.

---

[3] Petitioner's corrected Sentence Status Summary Sheet is attached to Weber's Declaration as Ex. 1.

2

> On 2/12/08, the Records Dept. here at SCI-Albion was conducting their routine investigation prior to the offender's release. At this time, they discovered an error on the offender's Sentence Status Summary Sheet. The second offense on his summary sheet was incorrectly listed as Theft instead of Robbery. The OTN number and all other offense and sentencing information was correct. When the offender was interviewed by the Board in November 2007, he was correctly seen as a violent offender and all accurate information, including the official version of the crime was included. The offender was sentenced for two Robbery convictions, which were the result of a single incident, at the same location and the same time against two individuals.
>
> On 2/14/08, the offender's Sentence Status Summary Sheet was revised to accurately reflect his convictions. Copies of the updated summary sheet as well as the official versions of the offense have been included for your review.
>
> It is understood that his release orders will need to be revised in order to reflect the change. However, please advise if any additional actions are to be taken regarding the Board's prior decision to grant re-parole.

(*3/11/08 Memorandum*, Weber Decl., Ex. 8).

On February 19, 2008, Petitioner filed a grievance in which he claimed that SCI-Albion's Parole Office was retaliating against him. On March 4, 2008, Unit Manager Jim Bentley denied the grievance, explaining:

> Your parole was rescinded because of incorrect wording concerning one of your sentences on your sentence status summary (from Philadelphia County). In short, parole did not have all necessary correct sentencing information when they last saw you. Now that the problem has been corrected the Parole Board will be re-scheduling you to see them. This matter is in no way "retaliation."

(*Initial Review Response*, attached to *Second Supplemental Complaint*, Docket No. 25 at 9).

On March 5, 2008, Petitioner filed a petition for writ of mandamus in the Commonwealth Court of Pennsylvania in which he contended that SCI-Albion's Parole Office had violated his due process rights by refusing to carry out the Board's order to release him on parole. (*Writ of Mandamus*, Ex. B to *Response*, Docket No. 14). On May 7, 2008, the Commonwealth Court issued a *per curiam* order dismissing the case. (Ex. C to *Response*, Docket No. 14). It recognized that a parolee has a vested liberty interest in the limited liberty offered by parole and that parole cannot be taken away without affording the parolee minimal due process guarantees of prior notice and an opportunity to be heard. (Id. (citing Shaw v. Pennsylvania Bd. of Prob. and Parole, 671 A.2d 290 (Pa.Commw. Ct. 1996); Johnson v. Pennsylvania Bd. of Prob. and Parole, 532 A.2d 50 (Pa.Commw. Ct. 1987)). The Commonwealth Court held, however, that there was no due process

3

violation in Petitioner's case because he had not acquired the limited interest in the liberty offered by parole since his parole had not yet been executed. It concluded that Petitioner was merely attacking a discretionary decision that was not subject to judicial review. (Id.) Petitioner did not appeal the Commonwealth Court's decision to the Supreme Court of Pennsylvania.

Next, on April 30, 2008, the Board reaffirmed its decision of December 10, 2007, in which it had granted Petitioner parole. (*4/30/08 Notice of Board Decision*, Weber Decl., Ex. 10). On May 7, 2008, Weber submitted a new request to the DOC to place Petitioner in a CCC with mental health treatment. (Weber Decl. ¶ 21). On June 6, 2008, Hatcher advised SCI-Albion's Parole Office that October 28, 2008, had been established as Petitioner's new parole release date, and that he was to be released to Gaudenzia First, a CCC in Philadelphia. (*6/6/08 Memorandum,* Weber Decl., Ex. 11). Weber explains that Petitioner's placement in a CCC took longer than the usual placement because he requires placement in a facility with a dual-diagnosis program that treats both the issues of mental health and chemical addiction, and CCCs providing these services are currently over capacity, which can result in a significant placement delay. (Weber Decl. ¶ 23).

Petitioner was not released to parole on October 28, 2008. This is because on September 29, 2008, Governor Edward G. Rendell asked the Board and the DOC to implement a parole moratorium and immediately suspend the release of all prisoners who had previously been recommended for parole pending the findings of an independent review by Professor John S. Goldhamp of Temple University. (Declaration of Kimberly Barkley, Parole Manager for the Board Secretary's Office (hereinafter "Barkley Decl.") ¶¶ 8-9, Ex. D to *Response To Petitioner's Motion For Speedy Remedy And Evidentiary Hearing*, Docket No. 22). The issuance of the moratorium was in response to the murders of two Philadelphia police officers by paroled offenders in a span of four months time. (Barkley Decl. ¶ 16; and, *9/30/09 Press Release*, Barkley Decl., Ex. 2). The Board and the DOC complied with the Governor's request and immediately issued a moratorium on all pending grants of parole. (Id.) Because of the institution of this moratorium, Petitioner's parole-release date of October 28, 2008 was cancelled. (Id. at ¶ 9).

On October 20, 2008, Governor Rendell requested that the Board and the DOC lift the parole moratorium for non-violent offenders. This request was based on the findings of Professor

4

Goldkamp. Since Petitioner had been convicted of robbery, a violent offense, the lifting of the moratorium did not apply to him and his grant of parole remained in suspense. (Id. ¶ 10; and, *10/20/08 Press Release*, Barkley Decl., Ex. 3).

On December 1, 2008, the Board and the DOC ended its moratorium on unexecuted grants of parole and began processing violent offenders, such as Petitioner, for release in conformity with the recommendations made by Professor Goldkamp. (Id. ¶ 11; and, *12/1/08 Press Release*, Barkley Decl., Ex. 4). In processing these unexecuted grants of parole, Professor Goldkamp's recommendations included dividing violent offenders, such as Petitioner, into two groups based on potential public safety risk. (Id. at ¶ 12). Further, Professor Goldkamp recommended placing high risk, violent offenders into specialized CCCs with violence prevention programming that have on-site parole agents who are trained to work with violent offenders. (Id.)

Respondents explain that in compliance with Professor Goldkamp's recommendations, by a decision rendered January 9, 2009, the Board modified its original grant of Petitioner's parole of December 10, 2007, to now grant him parole to a specialized CCC with violence prevention programming after he was paroled to a CCC specializing in mental health treatment. (Id. ¶ 13; and, *1/9/09 Notice of Board Decision*, Barkley Decl., Ex. 5). Thereafter, however, the Board reconsidered its January 9, 2009, order and decided to grant Hughes parole just to a CCC with mental health treatment. (Id. ¶ 14; and, *1/14/09 Notice of Board Decision*, Barkley Decl., Ex. 6).

According to Respondent, Petitioner will be released to parole at a CCC as soon as there is space available for him at the facility. (Docket No. 22, *Response to Petitioner's Motion For Speedy Remedy And Evidentiary Hearing* at 5, n.5). As stated previously, because Petitioner must be placed at a CCC that provides particular services, CCC placement may take longer than the usual placement. Petitioner recently informed the Court that the SCI-Albion Parole Office notified him that he is scheduled to be released to parole on June 30, 2009, and that he will be released to Gaudenzia First. (*Second Supplemental to Petition*, Docket No. 25, Ex. H).

### B.      Discussion

This case is governed by 28 U.S.C. § 2254(a), which requires a state prisoner such as Petitioner to demonstrate that "he is in custody in violation of the Constitution or laws or treaties of

5

the United States[]" in order to obtain federal habeas relief.[4] In his petition for writ of habeas corpus and his supplements thereto, Petitioner contends that his parole-release dates of February 19, 2008, and October 28, 2008, were postponed in retaliation against him for filing federal civil rights lawsuits, and that Respondents continue to retaliate against him because he has not yet been released to parole. (See *Petition* and *Brief In Support of Petition*, Docket Nos. 1 & 6; *First Supplement to Petition*, Docket No. 16; *Second Supplement to Petition* and *Brief In Support*, Docket Nos. 25 & 26). He asserts that the Respondents' explanations as to why he was not released to parole are pretext. As relief, Petitioner seeks an order from this Court directing Respondents to immediately release him.

The First Amendment protects a citizen's right to petition the government. See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 130 (3d Cir. 1990). Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution. White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). To prevail on a retaliation claim, a petitioner must show that: (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).

Petitioner's retaliation claim fails because he has not met the third prong of such a claim, *i.e.*, that his filing of civil rights lawsuits were a substantial or motivating factor in the postponement of his parole-release dates. Respondents have submitted evidence to show that SCI-

---

[4] Before relief can be granted on a federal habeas corpus petition, the claimed violation of the federal constitution or laws must be exhausted in the state courts, 28 U.S.C.§ 2254(b)(1)(A), unless petitioner had no remedy in the state courts, or has a formal remedy but circumstances make that remedy ineffective. 28 U.S.C.§ 2254(b)(1)(B); DeFoy v. McCullough, 393 F.3d 439, 442-43 (3d Cir. 2005).
   Respondents contend that the petition should be dismissed because Petitioner did not raise a retaliation claim in the writ of mandamus that he filed with the Commonwealth Court. Respondents further contend that Petitioner failed to exhaust because he did not appeal the Commonwealth's Court order to the Pennsylvania Supreme Court. Respondents have not sufficiently established for this Court, however, whether Petitioner actually could have pursued a retaliation claim before the Commonwealth Court. Since his parole had not been executed and since the Board had not actually rescinded the grant of parole (in reality SCI-Albion's Parole Office postponed it), it is unclear to this Court what state-court remedies were available to Petitioner, and this Court declines to dismiss the petition for failure to exhaust.

Albion's Parole Office postponed Petitioner's first parole-release date of February 19, 2008, because it had discovered the error on Petitioner's Sentence Summary Status Sheet, which incorrectly listed his second offense as theft instead of robbery. After SCI-Albion's Parole Office discovered and corrected the error, the Board needed to review the revised paperwork before SCI-Albion could release him to parole, and this resulted in the postponement of the parole-release date. Petitioner suggests that the Court must infer retaliatory animus because he was pursuing civil rights lawsuits around the same time. However, there is no evidence that members of SCI-Albion's Parole Office even were aware of these lawsuits.[5] In any event, Respondents have rebutted any presumption of vindictiveness resulting from the temporal sequence of events by explaining the circumstances which led to the postponement of the first parole-release date.

As for the postponement of Petitioner's October 28, 2008, parole-release date, there can be no dispute that that postponement was not motivated by any retaliatory animus. SCI-Albion could not release Petitioner to parole on that date because of the statewide moratorium on the release of all inmates on parole. This caused the suspense of hundreds of unexecuted paroles and the Board and the DOC are now in the process of addressing the backlog that the moratorium created. (Docket No. 22, *Response To Petitioner's Motion for Speedy Remedy And Evidentiary Hearing* at 5-6; and, Barkley Decl. ¶ 17).

In conclusion, SCI-Albion's Parole Office did not postpone Petitioner's parole release-dates for retaliatory reasons and he is not entitled to habeas relief. Petitioner currently is scheduled to be released to the CCC to commence his parole on June 30, 2009, and this Court has no authority to

---

[5] Moreover, Petitioner never explains why SCI-Albion's Parole Office would want to retaliate against him for lawsuits he filed against employees of the DOC or his medical doctors. Unless the state is conceived as one monolith and that actions taken against one arm of the state is an action taken against the entire state, then Petitioner fails to show a causal connection between SCI-Albion's Parole Office's actions and the litigation of his federal civil rights lawsuits. This is not a situation where Petitioner challenged the Board successfully and thereby arguably embarrassed the Board and its agents and thereafter the Board had an interest in retaliating against him. See Mickens-Thomas v. Vaughn, 355 F.3d 294 (3d Cir. 2004). The Board and its agents were strangers to Petitioner's federal civil rights lawsuits and so apparently had no interest in them whatsoever. Hence, there does not appear to be any causal connection between the postponement of Petitioner's parole-release date and his federal civil rights lawsuits. Cf. Johnson v. Rodriguez, 110 F.3d 299, 312-13 (5th Cir. 1997) ("Findings that in the past (or present), employees of other state departments or agencies have exhibited a bias against writ writers do not support a conclusion that the defendants in this case, members of the [Parole] Board, have acted and continue to act with retaliatory animus in denying prisoners parole.").

7

order SCI-Albion's Parole Officer to release him any earlier.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Applying these standards to this case, jurists of reason would not find the conclusions reached herein to be debatable. Accordingly, a certificate of appealability should be denied.

### D. Petitioner's Outstanding Motions

In addition to his petitions and supplements thereto, Petitioner also has filed a *Motion for Speedy Remedy And Evidentiary Hearing*. [Docket No. 20]. His request for a speedy remedy seeks immediate release, which is the same relief that he seeks in his petition for writ of habeas corpus. That request is denied, as the foregoing discussion has disposed of his claim that he is entitled to immediate release.

Turning next to Petitioner's request for an evidentiary hearing – it is within the Court's discretion to hold such a hearing in a case such as this, where there was no evidentiary hearing in the state court. See 28 U.S.C. § 2254(e)(2); Schriro v. Landrigan, 550 U.S. 465, 474-75 (2007); Thomas v. Varner, 428 F.3d 491, 497-99 (3d Cir. 2005). This Court declines to exercise its discretion and conduct a hearing because through their filings and the exhibits and declarations that they have submitted, the parties have developed the record sufficiently for this Court to make a ruling. Landrigan, 550 U.S. at 474-75 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Therefore, Petitioner's request for an evidentiary hearing is denied.

## II. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is denied, a certificate of

appealability is denied, and the pending motion for an immediate remedy and an evidentiary hearing is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT HUGHES,<br><br>             Petitioner,<br><br>v.<br><br>RAYMOND J. SOBINA, et al.,<br><br>             Respondents. | C.A. No. 08-165 Erie<br><br>**Chief Magistrate Judge Baxter** |

## ORDER

AND NOW, this 5th day of June, 2009;

IT IS HEREBY ORDERED that the petition for writ of habeas corpus is denied and a certificate of appealability is denied. The Clerk of Courts is hereby directed to close this case.

IT IS FURTHER ORDERED that Petitioner's *Motion for Speedy Remedy And Evidentiary Hearing* [Docket No. 20], is denied for the reasons set forth in the Opinion and Order issued today.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge